IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MALINDA CAMPBELL,

                                             OPINION AND ORDER

        Plaintiff,

                                                18-cv-1071-bbc

   v.

ANDREW SAUL,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Malinda Campbell is suing for disability insurance benefits and supplemental security income, alleging that she has been disabled since February 8, 2013, because of obesity, degenerative joint disease, carpal tunnel syndrome and fibromyalgia.[1] She contends that the administrative law judge who heard her suit erred in three respects: (1) failing to comply with SSR 01-01p of the Social Security Regulations in not considering the impact of plaintiff's obesity on her ability to work; (2) violating SSR 96-2 by not considering the effect of her mental impairments on her ability to work; and (3) violating SSR 00-4p by failing to resolve the conflict between the vocational expert's testimony and the Dictionary of Occupational Titles. For the reasons that follow, I conclude that plaintiff has failed to show that the administrative law judge erred in any respect. Accordingly, plaintiff's motion

---

      [1] The case caption has been amended to reflect the fact that Andrew Saul is now the Commissioner of Social Security.

1

for disability insurance benefits and supplemental security income will be denied.

The following facts are drawn from the administrative record (AR).

FACTS

A. Social Security Application

On May 16, 2013, plaintiff filed for disability insurance benefits and supplemental security income, alleging that she had been disabled since February 8, 2013, the day after her earlier benefits had ended. (In an earlier proceeding, Administrative Law Judge Brenton Rogozen had ruled plaintiff disabled under the Social Security Act for a "closed period" from June 24, 2011 until July 9, 2012, but not after that date.)

Plaintiff's second round of claims was denied initially and upon reconsideration. Plaintiff then requested and was granted a hearing before a new administrative law judge, Thomas Springer, on January 24, 2018, in Eau Claire, Wisconsin. Plaintiff testified, along with William Dingess, a vocational expert. The administrative law judge denied the claims in a written opinion entered on March 22, 2018, after which plaintiff filed this lawsuit.

B. Relevant Medical Evidence

Rather than proposing facts in her brief, plaintiff has set out 22 pages of what appear to be excerpts from doctors' reports filed between July 7, 2012 and December 20, 2017. Dkt. #9-1. It was not necessary to do this, because the court has access to all of the medical reports filed during the period at issue and medical evidence covering any other period is

irrelevant. I will consider only the evidence relating to the period starting February 8, 2013.

The notes on plaintiff's medical history set out in dkt. #9-1 show that plaintiff has the following medical problems: morbid obesity (she was 5'8" inches tall and weighed 260 pounds at the time of her January 2018 hearing), migraines, restless leg syndrome, asthma and chronic obstructive pulmonary disease (COPD). She has had problems with an ankle and an Achilles tendon in the past, but she has had surgery for tarsal tunnel syndrome in her right leg and for Achilles tendinitis in her right foot. AR 733. She also has sleep apnea, but it is controlled with the use of a CPAP (continuous positive airway pressure) machine.

The record contains a number of medical or psychiatric assessments of plaintiff. In September 9, 2014, Dr. George Walcott, a physician employed by the Social Security Administration, found that plaintiff had exertional limitations, but was capable of at least sedentary work. He found, in addition, that she could lift 10 pounds occasionally or frequently, walk or stand with normal breaks, sit for six hours with normal breaks in an eight-hour workday and had unlimited ability to push or pull, other than as limited by the restraint on her lifting or carrying. AR 156. He also found that plaintiff had no visual, communicative or environmental limitations; her carpel tunnel syndrome had improved with surgery; she had started physical therapy for her fibromyalgia but had gone to only two sessions; and she had frequent migraines, but had had a normal neurology examination. AR 146-47.

On October 1, 2014, Social Security Administration psychologist, Eric Edelman, Ph.D., conducted a psychiatric assessment of plaintiff and concluded that she did not have

3

any mental health impairment that would impose any limitations. He did note that plaintiff expressed anxiety. AR 154.

On August 20, 2015, another Social Security Administration physician, Dr. Mary McLarnon, addressed plaintiff's ability to perform her past relevant work and her exertional limitations, reaching opinions identical to those of Dr. Walcott. AR 173. Dr. McLarnon considered plaintiff's migraine headaches, finding that they were "not at listing level frequency or severity." AR 174.

Dr. Marcus Desmonde, Psy.D., saw plaintiff in September 2015 and found that she had a depressive disorder, unspecified, with occasional anxious distress, mild to moderate. AR 717. He believed that plaintiff was capable of managing her own finances, understanding simple instructions and carrying out tasks with any limitations set by a treating physician. AR 718-19. He also found her capable of interacting with co-workers, supervisors and the general public, but thought she might find the stress and pressure of full time competitive employment difficult to tolerate. AR 718.

Still another Social Security examiner, Dr. Carlos Jusino-Berrios, concluded in October 2015 that plaintiff had a history of anxiety and depression stemming from a physical condition, but that she appeared alert, well oriented, with no auditory or visual hallucinations, was not suicidal or homicidal, had good attention and concentration and was able to manage the activities of daily living. She could shop, drive, handle money and had no limitations on her social interactions. Assessing her "affective disorders," the doctor found that she had only mild restrictions on her activities of daily living, only mild

4

difficulties in maintaining social functioning and in maintaining concentration, persistence or pace and no repeated episodes of decompensation. The doctor concluded that plaintiff had a non-severe condition of "unspecified depression." AR 171-72.

C. Administrative Hearing

1. Plaintiff's testimony

At her hearing in January 2018, plaintiff testified that she was 40 years old, separated and the mother of two children, ages 23 and 16. She said she had worked in a number of food service operations, including one at a military base and others that were privately operated, such as a Denny's restaurant, where she was an assistant manager. AR 50. In these jobs, she lifted 50 pounds or more. She had also worked at a small community bakery where she lifted 25 to 50 pounds and served as a cashier, AR 51–53, and as manager of a greenhouse. AR 53. The greenhouse job involved lifting heavy bags and managing up to five employees at a time. AR 53-54.

Plaintiff has also worked for a cleaning company, cleaning offices and private homes that have had fires or flood damage and required demolition and removal of trash. AR 54-56. Her last job was in 2011 at Manpower, which sent her to a company that assembled couplings. At this job, she was on her feet six to seven hours a day and had to lift weights of more than 50 pounds on occasion. AR 58-59.

Plaintiff testified that she had fibromyalgia and that caused her legs to cramp, AR 69, and prevented her from bending or squatting. AR 70. She said also that she had thoracic

5

outlet syndrome in her left shoulder as a result of lifting up a patient when she was working as a nursing assistant. She said that this problem continued to bother her when she had to hold her arms up for any length of time. AR 70-72. She was taking Percocet for pain, Atenolol for migraines, Duloxetine (an antidepressant), to keep her moods stabilized, and Omeprazole to keep her stomach calm. AR 72-73. The Atenolol makes her either tired or dizzy and changes her moods, requiring her to take Duloxetine. AR 72-73.

2. Vocational expert's testimony

William Dingess testified as a vocational expert. In response to a question from the administrative law judge, he said that a hypothetical individual of plaintiff's age, education and work experience would not be able to perform any of plaintiff's previous work if she were restricted to lifting and carrying 10 pounds occasionally and less than 10 pounds frequently, stand and walk about two hours and sit for about six hours and precluded from climbing ladders and scaffolding, capable of occasionally climbing ramps and stairs, kneeling, crawling, stooping and balancing and required to avoid more than occasional exposure to extremes in temperature and humidity as well as vibration. He testified that a person with the limitations set out by the administrative law judge could perform other unskilled work within the sedentary exertional range, including the jobs of order clerk, of which there would be 15,900 jobs nationally; office helper, of which there are 400 jobs within Wisconsin; and assembler positions, of which there are 800 jobs in the state. AR 82-83. He added that all of these jobs could accommodate an individual who had to alternate between sitting and

6

standing at will. AR 83-84.

Dingess went on to say that if the person could handle and finger frequently rather than constantly bilaterally, and could only rarely operate foot controls, the number of assembler jobs would be reduced by 20 percent, to 600 jobs in Wisconsin. AR 84-85. If the reduction were to occasional handling and fingering, there would be no jobs available. AR 85.

OPINION

According to plaintiff, the administrative law judge erred in three ways, the first of which was failing to comply with SSR 02-1p of the Social Security Regulations in not considering the impact of plaintiff's obesity on her ability to work. The second was violating SSR 96-2 by not considering the effect of her mental impairments on her ability to work; and the third was violating SSR 00-4p by failing to resolve the conflict between the vocational expert's testimony and the Dictionary of Occupational Titles. I conclude that the administrative law judge did not fail to comply with the regulations and that he did not err in finding under the five-step evaluation process for social security appeals that plaintiff is not disabled.

A. Social Security Rulings

1. SSR 02-1p

The first of plaintiff's arguments directed to the Social Security Regulations centers

on the administrative law judge's alleged failure to consider the impact of plaintiff's obesity. That argument fails. The administrative law judge devoted seven paragraphs to explaining the many ways in which obesity can cause or contribute to a variety of impairments and why, in this case, it did not prevent plaintiff from working. He acknowledged that it is not enough to make assumptions about the effects of obesity when it is combined with other severe impairment and that a factual showing is required in order to prove that a combination of obesity and one or more other severe impairments impairs a person's ability to work.

Addressing the specific circumstances of plaintiff's obesity, the administrative law judge explained in detail why plaintiff had not shown that she had other impairments that, when combined with her obesity, prevented her from working at the sedentary level. The August 2009 surgery she had for plantar fasciitis of her left foot had gone well and an x-ray taken the next year showed no regrowth of bone and well-healed wounds from the surgery. Although she had indications of Achilles tendinitis in May 2012, in June 2014, she underwent right tarsal tunnel release and exostectomy of her Achilles tendon and reported a significantly reduced level of discomfort. In January 2015, she had additional treatment on her leg and reported in February 2015 that she was doing well.

The administrative law judge who heard plaintiff's first case noted plaintiff's failure to follow through with recommendations for physical therapy; the administrative law judge hearing this case noted that plaintiff had failed to return for physical therapy intended to help with her fibromyalgia. Other doctors noted her failure to comply with the instructions

8

for her post-operative care after her June 2014 Achilles tendon surgery. In February 2015, her podiatrist noted that her activity level was inhibiting her healing for the Achilles tendon surgery. In sum, the administrative law judge considered plaintiff's obesity, but also noted that plaintiff's failure to comply with her doctors' recommendations exacerbated her impairments.

2. SSR 96-2

This ruling is directed to determining an individual's residual functional capacity, which is the "individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." In this case, the administrative law judge gave careful consideration to plaintiff's mental activities. He concluded that she had only mild limitations in the four areas of mental functioning and that those limitations would not prevent her from working. This was a reasonable conclusion. AR 19-20.

Plaintiff cites Kasarsky v. Barnhart, 335 F.3d 539, 544 (7th Cir. 2003), in support of her argument that she is unable to work, but the case is not helpful to her. Mr. Kasarsky had "frequent deficiencies of concentration, persistence and pace," id. at 544, whereas plaintiff was found to have only mild limitations in this area. As the administrative law judge observed, plaintiff denied having any trouble maintaining her attention, was able to finish things she started, and reported being able to pay bills, count change, handle a savings account and use a checkbook or money order. AR 19-20. Plaintiff does not identify any specific work-related limitations that should have been incorporated into her residual

9

functional capacity. As a result, her argument fails.


3. SSR 00-4p

Plaintiff's third claim is that the administrative law judge violated SSR 00-4p in failing to resolve the conflict between the vocational expert's testimony and the Dictionary of Occupational Titles. Specifically, she says, the job of eye dropper assembly requires constant handling and fingering, whereas the vocational expert characterized the job of assembler as requiring no more than frequently requiring handling and fingering. The commissioner points out that even if plaintiff could not assemble eye droppers, she has not suggested that she could not assemble other products or work in the office jobs or order clerk positions the vocational expert listed.


B. Determination of Non-Disability

Other than asserting that the administrative law judge misapplied social security rulings, plaintiff does not challenge the conclusion that she was not disabled. Accordingly, it is unnecessary to undertake an analysis of the administrative law judge's sequential evaluation process. 20 C.F.R. §§ 404.1520(g) and 414.920(g).

ORDER

IT IS ORDERED that the decision of defendant Andrew Saul, Commissioner of Social Security is AFFIRMED and plaintiff Malinda Louise Campbell's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 8th day of November, 2019.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge